Rocky Mountain Nat. Bank et al. v. McCaskill et ux.

1. Practice in the Supreme Court — Exceptions, and Assignments of Error, Necessary to a Review.— The settled practice of the supreme court precludes the review of questions of fact determined by the trial courts, unless exceptions be saved to the judgment, and the matter sought to be reviewed is duly assigned for error.

2. Dissolution of Copartnership and Notice Thereof.— Regular customers and dealers with a firm are required to have special notice

of its dissolution before they can be prejudiced thereby; but parties who only take for discount the paper of the firm are sufficiently notified by the general notice of dissolution, which must always be given, and which must be sufficient to warn and notify the public thereof.

3. EXECUTION OF FIRM NOTES FOR INDIVIDUAL PURPOSES.— Without actual knowledge of the want of authority of a partner to make negotiable paper in the name of the firm, when thus made and presented for discount, the lender is not obliged to inquire into the intentions, or to see that the money is applied to firm uses; but it is otherwise if the lender knows that the paper is not made for the legitimate business of the firm, or that the money is obtained to discharge an individual debt of the partner who executed the paper. And while the burden of proving that the lender was aware of the wrongful use of the firm name is on the party asserting the irregularity, his knowledge that the firm notes so made were substituted for the partner's individual notes, with other circumstances concurring at the time, may authorize a court to find that he was sufficiently advised that the paper was not being used for the legitimate business of the firm.

### Appeal from District Court of Arapahoe County.

THIS was a suit in equity, brought by appellees against appellants, to set aside, declare void and cancel two promissory notes and a trust-deed upon certain lands in the state of Kansas, executed by appellees to secure the payment of the notes. For many years prior to the summer of 1885 one William M. Roworth was a merchant doing an extensive business in Central City in this state. About the year 1870, Roworth and appellee John McCaskill formed a partnership for the purpose of breeding, raising and dealing in cattle. By the terms of the contract of partnership, McCaskill, who had very limited means, was to take charge of and give his attention to the business for a certain interest, and Roworth was to furnish the necessary money. The business was prosecuted for some years in Colorado under the firm name of Roworth & McCaskill, was then transferred to Chase county in the state of Kansas, where the business was prosecuted under the same name, and was there continued until some date not definitely fixed, but prior to June, 1885, when the partnership was dissolved,

and the business continued in the name of John McCaskill. Roworth was at all times a borrower of money in the conduct of his business; for years had done business with and been a borrower from the appellants, the Rocky Mountain National Bank of Central City and the Colorado National Bank of Denver, by both of which he was usually carried for quite large sums; his notes at each of said banks being renewed from time to time, and the indebtedness continued almost indefinitely. On the 28th day of July, 1885, Roworth was indebted to the Rocky Mountain National Bank on a note of another person, the payment of which he had guarantied, and which he had discounted, in the sum of about $4,500, and for overdrafts in about $1,500, in settlement of which he made the following note: "$6,000. Central City, Colo., July 28, 1885. On demand, after date, we promise to pay to the order of Wm. M. Roworth, six thousand dollars at the Rocky Mountain National Bank, with interest at one per cent. a month from date until paid. ROWORTH & McCASKILL. Value received. No. 7,675."

And on the back of said note is the following indorsement: " For and in consideration of the sum of ten cents, the receipt whereof is hereby acknowledged, I hereby guaranty the payment of the within note, waiving demand and notice of non-payment and protest; and agree to pay all costs and expenses paid or incurred in collecting the same. WM. M. ROWORTH."

On June 30, 1885, Roworth was indebted to the Colorado National Bank of Denver in the sum of $5,000, which had been of long standing, and frequently renewed, each time previously by his individual note, and on that date he gave to the bank the following note, and took up his own: " $5,000. Denver, Colorado, June 30, 1885. One day after date we promise to pay to the order of the Colorado National Bank of Denver five thousand dollars at the Colorado National Bank of Denver, with interest at one per cent. per month from date until paid. ROWORTH & McCASKILL. WM. M. ROWORTH. Value received. No. 42,626."

Shortly after this Roworth failed. On the 31st day of August, 1885, Roworth, T. H. Potter, of the Rocky Mountain National Bank, and the attorney of the Colorado National Bank were at the place of residence of appellees in Kansas to obtain from McCaskill security for the payment of the two notes due, respectively, to the two banks. Roworth had an interview with McCaskill, informed him of the existence of the notes, stated that he was embarrassed, needed help, and urged McCaskill to secure the two notes and assist him in that way. McCaskill consented, met the agents of the banks, executed his notes, payable one year after date, for the sums respectively due on the former notes; the note for the sum due the Rocky Mountain National Bank being made payable to Potter, and the sum due the Colorado National Bank made payable to Kountze, its president; both notes being secured by trust-deed on the lands of appellees in Kansas, William B. Berger being named as trustee; and the former notes were canceled. At the same time Roworth executed and delivered to McCaskill his note for $12,000, to cover the indebtedness assumed and secured by McCaskill.

It is alleged in the complaint that before the notes of June 30th and July 28th were made the firm of Roworth & McCaskill had been dissolved; that Roworth never had authority to make notes in the name of the firm; that the indebtednees for which the notes were given was the individual indebtedness of Roworth; and that such fact was known to the defendants at the time, and that Roworth executed the notes of the firm at their solicitation and instance, they having full knowledge that the indebtedness was not that of the partnership. Also that the two notes of McCaskill and the trust-deed were obtained by fraud and by misrepresentation of Roworth, Potter, and the attorney, Bartels, in regard to the financial condition of Roworth, they representing that Roworth's embarrassment was only temporary; that he had ample property to satisfy his debts, and only needed time, when in fact Roworth was

hopelessly insolvent,—— praying that the notes and trust-deed be declared void, and that they be canceled and delivered up.

A very voluminous answer was filed, traversing every important allegation of the complaint. In an amendment to the answer, defendants, by what may be treated as a cross-complaint, assert the validity of the two notes of June 30th and July 28th to the respective banks as the proper debts of the firm, and pray judgment against McCaskill for the amount of the notes and interest. Upon the trial a jury was impaneled, to which several issues of fact were submitted, by a series of questions, twelve in number, in regard to the manner in which the notes and trust-deed were obtained from appellees, all of which were answered adversely to the defendants (appellants), and sustaining the allegations in the complaint that they were obtained by fraud, misrepresentation, and concealment of important facts; but no issues of fact were submitted to the jury in regard to the validity of the former notes executed with the firm name by Roworth. Much oral testimony was given, some of it quite contradictory and irreconcilable. The court found in favor of appellees upon all the issues, and decreed that the McCaskill notes be canceled and delivered up, that the trustee execute and deliver a deed of release freeing the land from the lien created by the trust-deed, holding the former notes invalid as against McCaskill, and refusing the prayer in the cross-complaint for a judgment against him upon them. From such decree, and the overruling of a motion for a new trial, an appeal was taken to this court.

Mr. Lucius P. Marsh and Messrs. Bartels & Blood, for appellants.

Mr. L. C. Rockwell and Mr. D. McCaskill, for appellees.

Reed, C. The established practice of this court precludes the review of questions determined in the lower court, un-

less exceptions were saved to the judgment, and error duly assigned. The only question submitted by the single assignment in this case for the determination of the court is the one of the validity of the notes as partnership paper at the time of their execution and delivery. The dissolution of the partnership before the making of the notes seems to have been unquestioned. Whether the officers of either bank knew of the dissolution of the partnership is left in doubt. It is not conclusively or satisfactorily shown that they had such knowledge. The dissolution of the firm could in no way affect appellants unless it were shown that they had knowledge of it. Regular customers and dealers with a firm are required to have special notice of the dissolution. Parties who, like appellants, only take for discount the paper of the firm, are not required to have special notice, but there must be a reasonable or general notice, sufficient to warn and notify the public, by publication of a notice of dissolution, or in some other public manner. 1 Daniel, Neg. Inst., § 369b; *Lovejoy v. Spafford*, 93 U. S. 439; *Bank v. McChesney*, 20 N. Y. 240. It does not appear from the evidence that any notice whatever was given of the dissolution, or that the fact was known to any one but the former members of the firm.

It was contended by appellees that Roworth had no authority to bind the partnership in the making of promissory notes. This contention was not established by the proof. If his authority in this regard was limited by a special contract between himself and McCaskill, nevertheless, as to third parties, such a contract would have been a nullity, unless their knowledge of the fact was shown. The authority of a partner to bind the firm within the scope of its business is implied, and grows out of the fact that it is a firm, and each member is a general agent for the other copartners. 1 Daniel, Neg. Inst., §§ 355, 356; *Greenslade v. Dower*, 7 Barn. & C. 635; *Swan v. Steele*, 7 East, 210. There is this distinction to be made: A contract made between partners, that certain members of the

firm only could bind the firm, might be valid as between themselves, and might make a debt which purported to be a firm debt an individual debt in the adjustment of the partnership affairs, while such debt would be a firm debt in the hands of a third party who had no knowledge of the want of authority of the partner executing the paper. Another well settled rule of law is that without actual knowledge of the want of authority of a partner to make negotiable paper in the name of the firm, where paper properly executed in the name of the firm is discounted, the lender is not required to inquire into the intentions, or to see that the money is properly applied to firm uses; but if the lender knows that the paper is not made for the legitimate business of the firm, or knows that the money is obtained for the purpose of discharging an individual debt, the paper would be invalid in his hands as against the firm. The burden of proving that the lender was aware of the wrongful use of the firm name and cognizant of the fraud is upon the party asserting the irregularity. 1 Daniel, Neg. Inst., § 357; *Hayward v. French*, 12 Gray, 453; *Sedgwick v. Lewis*, 70 Pa. St. 221.

The testimony is very conflicting in regard to the knowledge of appellants at the time of the execution of the respective notes that they were not being used for the purposes of the firm, but for the individual benefit of Roworth; but sufficient appears in evidence in regard to what was said and done at the time, taken in connection with the established fact that the notes were substituted for the individual notes of Roworth, that had been frequently renewed before that time for indebtedness that was not created in the name of the firm, but in his individual name, to warrant the court in finding that the respective parties had the necessary knowledge that the paper was not being used in the legitimate business of the firm. Although there was much testimony opposed to this view, there was sufficient in its favor to warrant this court in refusing to disturb the finding; and, as before stated, this court, by reason of the

absence of assignments of error, being precluded from examining the question of subsequent ratification and adoption of the notes by McCaskill, we recommend that the decree be affirmed.

RICHMOND, C., concurs.    BISSELL, C., concurs in result.

PER CURIAM.    For the reasons stated in the foregoing opinion the judgment is affirmed.

*Affirmed.*