No. 13,091.

FISHER *v.* COLORADO CENTRAL POWER COMPANY.
(29 P. [2d] 641)

Decided February 5, 1934.

Messrs. BARTELS & BLOOD, Mr. PAUL P. EAGLETON, for plaintiff in error.

Mr. J. E. McCALL, for defendant in error.

*In Department.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error is hereinafter referred to as Fisher,

defendant in error as the Power Company, the Acme Sand and Gravel Company as the Gravel Company, one Gerald V. Stack as Stack, and one A. J. Collins as Collins.

The Power Company sued Fisher and Stack, as co-partners doing business as the Gravel Company, for a balance of approximately $900 and interest, due on open account for electric power furnished for the operation of a gravel pit. Fisher denied that he was a partner. The cause was tried to the court and the Power Company had judgment. To review that judgment Fisher prosecutes this writ. The assignments present the contentions that the judgment is not supported by the evidence and that certain evidence was erroneously admitted.

Stack was in the sand and gravel business, Collins had a road paving contract, and Fisher dealt in contractor's supplies. In 1925 they formed a partnership on Collins' contract. That year, or the next, Fisher bought a gravel pit and these men continued similar business activities, whether as a partnership or not is disputed. They operated under the name of the "Acme Sand and Gravel Company." Early in 1927 Collins sold out to Fisher and there is evidence that thereafter he and Stack operated the business on an equal footing as to possible profits. In September, 1927, the plant was transferred by Fisher to Stack who gave back a $10,000 mortgage, and who testified that Fisher was thereafter to finance it, the same as before, until it reached a profitable basis, and that he did so until December, 1928. There is evidence that while Fisher owned the gravel pit, the Gravel Company, with his knowledge, used it; that Fisher was backing Stack and Collins in the expectation of enabling them to pay debts due him; that his sole hope of remuneration for sand and gravel taken from the pit lay in the Gravel Company's possible profits; that his employee kept the Gravel Company's books and that they were kept in Fisher's office; that all bills, including those of the Power Company, came there and were paid by checks written

by that bookkeeper; that all returns to the Gravel Company came to that office; that no change in the method of doing business followed the transfer from Fisher to Stack; that bills against the Gravel Company were sometimes paid by the checks of "Francis J. Fisher, Inc." and were written and signed by an officer of that concern, who in some cases was the bookkeeper referred to; that some of these were written to the Power Company to apply on the Gravel Company's account; that the Power Company continued to send its bills against the Gravel Company to Fisher's office; that it was never directed by anyone to do otherwise; that the Power Company began to furnish electric current to the Gravel Company in 1926, and continued to do so up to 1929; that the portion of the account sued for is approximately the current furnished between April 1 and December 1, 1929; that Fisher, if he was a member of the copartnership prior to his transfer of the property to Stack, gave no notice, directly or indirectly, to the Power Company or anyone else of his withdrawal or the dissolution of the partnership; that the contract under which all current was furnished was originally made with "The Arapahoe Electric Light and Power Company," which corporation later sold out to the Power Company; and that the latter understood in the beginning that the Gravel Company was a partnership composed of Stack, Collins and Fisher.

The Gravel Company was an unincorporated association which the law holds to be a partnership. *Richardson v. Keely,* 58 Colo. 47, 57, 142 Pac. 167. Whatever may have been Fisher's relation to this partnership subsequent to his sale to Stack there is ample evidence to hold him a member of it prior thereto and to support the conclusion of the trial court that the Power Company dealt with it on that basis. Neither a specific intent nor a written contract to form a copartnership is essential to its creation. *Richardson v. Keely, supra.* As to persons who had theretofore dealt with that partnership, or to whom it was indebted, the responsibility of Fisher, in

the absence of notice of his withdrawal, is clearly settled. *Hunt & Co. v. Colo. Milling & E. Co.,* 1 Colo. App. 120, 27 Pac. 873. *Rocky Mt. Nat. Bank v. McCaskill,* 16 Colo. 408, 26 Pac. 821. It is said the rule does not apply here because Fisher, if a partner, was an "unknown," "silent" or "dormant" partner. This is incorrect, both in law and fact. The statute requires that a partnership, using such a name as that selected by this, shall file with the county clerk and recorder an affidavit setting forth, inter alia, the names and addresses of its members, who, in default are guilty of a misdemeanor. C. L. 1921, p. 795, §2457. Fisher was in personal charge of the finances of the Gravel Company, his office was its office, he received its money, bills of this creditor against it were sent there and paid there by his employee without protest, and sometimes by checks of a corporation which the record justifies us in presuming that he owned or controlled, and he owned the land on which it operated.

In view of the foregoing we think the objections made to the admissibility of evidence require no special notice. Some of this evidence we disregard because unnecessary to our conclusions, and those conclusions are imperative irrespective of it. Some of it was clearly admissible, and such as may be considered doubtful is disposed of in the light of the fact that the trial was to the court and the presumption of no prejudice, where none appears, should be indulged.

The judgment is affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE HOLLAND concur.