## No. 21676.

QUINTUS C. FULLER *v.* JOSEPH W. BROUGH, JR.

(411 P.2d 18)

Decided January 31, 1966.     Rehearing denied February 28, 1966.

KENNETH T. COLWELL, JAMES H. SHELTON, for plaintiff in error.

JOHN W. O'HAGAN, DAVID B. EMMERT, for defendant in error.

*En Banc.*

MR. JUSTICE McWILLIAMS delivered the opinion of the Court.

THIS is a dispute between two professional persons who decided to form a partnership and for some six years thereafter engaged in the practice of public accounting. On December 1, 1958 Joseph Brough and Quintus Fuller, each of whom was a certified public accountant, entered into a partnership agreement whereby they formed a partnership to engage in the practice of public accounting under the name and style of Brough & Fuller with their principal office to be located in Greeley, Colorado. Brough had been a resident of Greeley for many years prior to 1958, whereas Fuller had resided in California from 1956 to 1958, although prior to 1956 he too had resided in Greeley.

The partnership agreement, which was prepared by the parties thereto without the benefit of counsel, provided that the partnership "shall continue until terminated as herein provided." The agreement then went on to provide that the partnership could be terminated either by "retirement" upon reaching the age of sixty-five, which provision has no application to the instant controversy, or by "voluntary liquidation of the partnership." As concerns "liquidation" of the partnership, the agreement reads as follows:

"b. *Liquidation. Either partner shall have the right to withdraw from the partnership at any time.* Written notice of intention to withdraw shall be served upon the other partner at the principal office of the partnership at least three months prior to his withdrawal. The withdrawing partner shall be entitled (or his estate in the event of his subsequent death) to receive his capital balance computed on a cash basis as of withdrawal date and 10% of the cash receipts for five years following withdrawal payable monthly." (Emphasis supplied.)

The partnership agreement also contains a so-called "noncompetition" clause and it is this particular proviso that triggers the present controversy. The noncompetition clause provides as follows:

"c. *Noncompetition.* The withdrawn or retired partner shall not engage directly or indirectly in the practice of accounting in or within 45 miles of the City of Greeley, Colorado, or such other towns or cities wherein the firm may have established an office, for a period of 5 years from the date of his withdrawal or retirement."

On August 21, 1964, after the partnership had been in existence for nearly six years, Fuller caused the following notice to be delivered to Brough:

"Please be informed that our partnership will be terminated prior to the end of 1964, in fact, as soon as details can be worked out together.

"This action on my part is due to the fact that you have violated the terms of our agreement in that

"1. you have not devoted your entire time and energy to the business of the partnership.

"2. you have engaged in other 'business' without first obtaining my written or verbal consent."

In response to this notice Fuller testified that Brough informed him as follows: "if you're going to withdraw from the partnership, then you withdraw on the basis of the agreement."

Thereafter, on September 4, 1965 Fuller caused a second written notice to be delivered to Brough. In this particular notice Fuller advised Brough as follows:

"Please be informed that I'll do my utmost to complete all necessary arrangements by the end of the month to move my office to another location in Greeley."

On September 24, 1964 Brough brought an action against Fuller, attaching to his complaint a copy of the partnership agreement, and then setting forth in the complaint the two notices which Fuller had caused to be delivered to him on August 21, 1964 and on September 4, 1964. Based on information and belief, Brough then went on to allege that Fuller, as the withdrawing partner, intended on or about October 1, 1964 to open a separate office for the practice of accounting in Greeley, Colorado, all of which was contrary to the noncompetition agreement. Accordingly, Brough prayed that the partnership be declared terminated as of October 1, 1964 and that Fuller be restrained from practicing accounting in or within 45 miles of Greeley for a period of 5 years.

By answer and also by way of a counterclaim, Fuller denied that he had in anywise breached the partnership agreement or that he was *voluntarily* withdrawing from the partnership. Fuller then went on to affirmatively allege that it was actually Brough who was the voluntary retiring partner and that it was Brough — not himself — who should be restrained from the practice of

accounting in and within Greeley for a period of 5 years. Fuller averred that Brough had theretofore breached the partnership agreement in that Brough had purchased a farm in January 1964, without first obtaining the consent of Fuller, and as a result of this purchase it was alleged that Brough was no longer devoting his full time to the partnership business, all of which was said to be in violation of the partnership agreement. It was also said that differences of opinion had arisen between Fuller and Brough concerning the operation of the business which could not be resolved. Accordingly, Fuller asked that the partnership be dissolved and that Brough be determined to be the voluntarily retiring partner and that Brough be compelled to comply with the noncompetition clause.

A trial of this matter was had to the court on November 6, 1964. Without going into great detail, it was Brough's general theory of the case that this was purely and simply a situation where Fuller had a change of heart and wanted to get out of the partnership, but at the same time wanted to be free from the noncompetition clause in the partnership agreement. To thus have his cake and eat it too, Brough claims that Fuller accused him of misconduct as to the partnership affairs in his efforts to make his own withdrawal appear to be an "involuntary" one, instead of a voluntary withdrawal. Conversely, it was Fuller's general position that Brough was guilty of such misconduct in regard to the partnership that under the circumstances his was an *involuntary* withdrawal from the partnership, and that accordingly he should not be bound by the noncompetition clause.

At the conclusion of the presentation of evidence, the court took the matter under advisement. On November 18, 1964 the court made its findings and conclusions and proceeded to enter judgment in favor of Brough. More specifically, the trial court found that Brough had not violated the terms of the partnership agreement between the parties. And though the trial court found that Fuller

had not in anywise breached the partnership agreement, the court nevertheless went on to find that it was Fuller who was the voluntarily retiring partner. Noting that the partnership agreement required the withdrawing partner to give at least 3 months notice prior to his withdrawal, the trial court entered a judgment declaring that the partnership be deemed terminated as of November 21, 1964 — which was 3 months from the date when Fuller sent his first notice to Brough. Finally, the trial court entered an injunctive order restraining Fuller from practicing accounting in or within 45 miles of Greeley for a period of 5 years from November 21, 1964.

On November 20, 1964, which was two days after the trial court made its finding and entry of judgment and one day before the partnership was to be deemed formally terminated, Fuller served a notice on Brough of his desire to withdraw his prior notice of that which the trial court had just determined to be a notice of intention to withdraw. Specifically, Fuller requested that his letter of August 21, 1964 be withdrawn, and requested that their partnership continue, with the promise that he (Fuller) would perform all duties required of him as a partner in accordance with the partnership agreement and in accordance with sound "business and moral practices." In this latter notice Fuller stated that he was motivated by a "careful consideration of all factors and matters involved in this controversy," including the serious damage both financially and to the reputation of the parties which would result if the litigation between them was continued.

Thereafter, Fuller filed a motion for new trial or to amend the judgment, averring among other things that the court was without jurisdiction to terminate the partnership as of November 21, 1964, inasmuch as on November 20, 1964 he had withdrawn his prior notice of August 21, 1964. On motion the trial court ordered that Fuller's "notice" of November 20, 1964 be stricken and

thereupon denied the motion for a new trial. By writ of error Fuller now seeks to reverse the judgment of the trial court.

Although the general rule is that gross misconduct, want of good faith, wilful neglect of partnership obligations, and such other causes as are productive of serious and permanent injury to the partnership, or which render it impracticable to carry on the partnership business, are proper grounds for the dissolution of a partnership by a court of equity at the instance of the innocent partner, nevertheless a court of equity will not dissolve an existing partnership for trifling causes or temporary grievances involving no permanent mischief. See 40 Am. Jur. pp. 300-301. It should be noted, however, that in the instant case the trial court found in effect that neither Brough nor Fuller was guilty of any misconduct as concerns partnership matters and in this connection specifically found that Brough had in nowise violated the terms of the partnership agreement between the parties. At best, the evidence discloses only temporary grievances between the parties which tended to be of a trifling nature. In any event this finding of fact that there was no misconduct on the part of either Brough or Fuller has support in the record, and hence cannot be disturbed by us on review. The trial court, not this court, is the fact-finding body. See *Greathouse v. Jones,* 158 Colo. 516, 408 P.2d 439.

Having determined that neither party was at fault, the trial court went on to determine that under the circumstances it was Fuller who was "voluntarily liquidating the partnership" and that inasmuch as he was the withdrawing partner he was bound by the noncompetition clause. Fuller argues that his was really an *involuntary* liquidation on the premise that he was virtually compelled to so do because of the alleged misconduct on the part of Brough. However, in view of the finding of the trial court that Brough had not vio-

lated the terms of the agreement, this argument falls under its own weight.

■■ It should be remembered that we are here concerned with a partnership which could be terminated at the will of either of the parties. In other words, the partnership could be terminated at any time by either party with or without reason. However, the same partnership agreement goes on to provide that he who voluntarily liquidates the partnership by withdrawing therefrom is to be bound by the noncompetition clause. This type of a noncompetition clause has been upheld and enforced by this court in *Mabray v. Williams*, 132 Colo. 523, 291 P.2d 677 and also in *Freudenthal v. Espey*, 45 Colo. 488, 102 Pac. 280. It should be noted that the agreement in the instant case contains one provision which was not contained in the contracts under consideration in either the *Mabray* or *Freudenthal* case, namely the proviso that for the period of time that the voluntarily withdrawing partner is prohibited from practicing he is to receive 10% of the cash receipts of the partnership. Finally, Fuller's plea that to enforce such a restriction is unnecessary and tends to work an undue hardship upon him loses its appeal when it is remembered that he sought to fasten the same burden on Brough. The partnership agreement in this regard at least is quite clear, and under the circumstances the noncompetition clause cannot be ignored, but on the contrary must be enforced as it was written by the parties themselves.

■ One remaining issue relates to the effect of Fuller's action of November 20, 1964 when he attempted to withdraw his earlier notice of intention to withdraw which had been delivered to Brough on August 21, 1964. In this regard Brough urges that under the circumstances Fuller is estopped from so doing. On the strength of that notice, as well as the subsequent notice of September 4, 1964 wherein Fuller stated that he would open another office in Greeley by October 1, 1964,

Brough changed his position by retaining counsel and instituting the present proceeding in order to enforce the noncompetition clause in the partnership agreement. It has been held that the incurring of the expense of employing an attorney and commencing suit is such a change of position as to invoke the doctrine of estoppel. See *Federal Life Insurance Company v. Wells,* 98 Colo. 455, 56 P.2d 936.

In the instant case the matter, however, does not end there. By his answer Fuller did not elect to withdraw his notice, but rather joined issue with Brough and affirmatively sought to have Brough declared to be the voluntarily withdrawing partner and to enjoin him from practicing accountancy within 45 miles of Greeley for 5 years. And even upon trial Fuller evinced no desire to withdraw his earlier notices and return peaceably into the partnership fold. Rather, it was only after he had suffered an adverse judgment at the hands of the trial court that Fuller had this belated change of heart. Under such circumstances we hold that Fuller's notice of his desire to withdraw his earlier notice is too late. The notice having been acted upon before it was attempted to be withdrawn, the equitable principle of estoppel in pais precludes this belated shift in position. See *Johnson v. Neel,* 123 Colo. 377, 229 P.2d 939 and *Piz v. Housing Authority,* 132 Colo. 457, 289 P.2d 905.

The judgment is affirmed.

MR. JUSTICE MOORE not participating.