Thomas J. MAHON, Francis H. Mahon, Frank N. Zarlengo, and the Vincent A. Covillo Trust, Plaintiffs-Appellees,

v.

Bart HARST and John B. Smith, Defendants-Appellants.

No. 85CA1439

Colorado Court of Appeals, Div. IV.

April 9, 1987.

---

Cogswell and Wehrle, John M. Cogswell, Laurin D. Quiat, Denver, for plaintiffs-appellees.

Sheila H. Meer, P.C., Sheila H. Meer, Nancy P. Tisdall, Denver, for defendants-appellants.

BABCOCK, Judge.

Defendants, Bart Harst and John B. Smith, appeal the trial court's judgment ordering defendants' removal as general partners in a limited partnership pursuant to C.R.C.P. 106(a)(2) and awarding to plaintiffs certain management fees that had been paid to defendants, and attorney fees. We affirm in part, reverse in part, and remand with directions.

Before 1981, the parties were shareholders, officers, and directors of Western Health Care, Inc., which owned and operated a nursing home. In April 1981, Western Health Care leased the nursing home to a management company for a monthly fee. For tax purposes it became desirable for Western Health Care to adopt a one-month liquidation plan and reorganize itself as a limited partnership.

In August 1981, the parties met with their attorney and signed a limited partnership agreement to form Mark V, Ltd. The attorney testified that the parties also agreed that plaintiffs would be limited partners, defendants would be general partners, and that replacement of general partners would require a 75% vote. The 75% vote requirement was to be set forth in a more formal limited partnership agreement, which would be drafted later. The formal agreement was also to contain a written agreement providing for compensation of the general partners. However, no further agreement was ever signed.

Defendants began paying themselves a monthly management fee of $3,750. Plaintiffs testified that they had never agreed to any such fee. Plaintiffs and defendants continually disagreed about the fees, and defendants refused to satisfy plaintiffs' demands for financial and management information about the nursing home.

In January 1983, the plaintiffs, who owned 80% of the limited partnership, voted to remove defendants and to replace them with plaintiffs Thomas and Francis Mahon. After defendants refused to acknowledge this action, plaintiffs brought this suit, seeking dissolution of the partnership and an accounting, or to enforce defendants' removal by injunction or by an order issued pursuant to C.R.C.P. 106(a)(2).

I.

Defendants first contend that the trial court erred in finding an enforceable agree-

ment between the parties whereby defendants could be removed as general partners by a 75% vote of the partners. We disagree.

■ Although a certificate of limited partnership must be in writing pursuant to § 7–61–103(1), C.R.S. (1986 Repl.Vol. 3A), a written partnership agreement governing matters not covered by § 7–61–103(1)(a) is not required. *See Fisher v. Colorado Central Power Co.*, 94 Colo. 218, 29 P.2d 641 (1934); *cf.* § 7–62–101(9), C.R.S. (1986 Repl. Vol. 3A). Removal and substitution of general partners is not within the purview of § 7–61–103(1)(a); hence, an enforceable oral agreement to that effect is not precluded.

■ The trial court found that the parties were informed by their attorney at the time they executed the Certificate of Limited Partnership that removal of the general partners would require the vote of 75% of the partners, *i.e.*, all six limited partners. The court further found that the parties had a separate and contemporaneous agreement concerning the voting requirement, and that they did not intend for the limited partnership certificate, which did not contain any voting provisions, to be an integrated agreement. Therefore, evidence of the voting agreement was not precluded by the parol evidence rule. *See Stevens v. Vail Associates, Inc.*, 28 Colo.App. 344, 472 P.2d 729 (1970). These findings are supported by the evidence and are therefore binding on review. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

## II.

Defendants next contend that the trial court improperly granted relief under C.R.C.P. 106(a)(2). They maintain that relief in the nature of mandamus was inappropriate, since a C.R.C.P. 106(a)(2) action will not lie either to compel a general partner to remove himself from that position of trust, or to compel replacement of one general partner by another.

Although relief in the nature of mandamus will lie to compel a corporation or its officers to perform an act required by law, *see Hertz Drive-Ur-Self System v. Doak*, 94 Colo. 200, 29 P.2d 625 (1934), whether mandamus is available to compel a general partner to perform an act required by law has not been addressed in Colorado. *See Two Eleven Co. v. Harrison*, 66 Misc.2d 245, 319 N.Y.S.2d 897 (1971).

However, we need not resolve this question here. Before mandamus will issue, the party seeking such relief must satisfy a three-part test: (1) such party must have a clear right to the relief sought; (2) the opposing party must have a clear duty to perform the act requested; and (3) there must be no other available remedy. *White v. Rickets*, 684 P.2d 239 (Colo.1984). Mandamus will not issue until all forms of alternative relief have been exhausted. *Gramiger v. Crowley*, 660 P.2d 1279 (Colo. 1983).

Defendants argue that plaintiffs were not entitled to mandamus because they had not exhausted all other available remedies. We agree with this contention.

■ Where removal of a general partner is sought pursuant to a vote of the partners under the terms of a partnership agreement, the proper remedy in the event of a recalcitrant general partner is afforded by § 7–61–126(3) and (4), C.R.S. (1986 Repl.Vol. 3A). This section empowers the court to issue an order directing the recordation of an amendment of the certificate of limited partnership to reflect removal of a general partner and the substitution of a limited partner in his place. *See Consortium Management Co. v. Mutual America Corp.*, 246 Ga. 346, 271 S.E.2d 488 (1980); *Brown v. Panish*, 99 Cal.App.3d 429, 160 Cal.Rptr. 282 (1979).

However, plaintiffs' complaint did not seek to amend the certificate, but instead sought judicial dissolution of the partnership pursuant to § 7–60–132(1), C.R.S. (1986 Repl.Vol. 3A), a right granted to limited partners by § 7–61–111(1)(c), C.R.S. (1986 Repl.Vol. 3A). Section 7–60–132(1) provides that a court shall decree the dissolution of a partnership if:

"(c) A partner has been guilty of such conduct as tends to affect prejudicially the carrying on of business;

"(d) A partner willfully or persistently commits a breach of the partnership agreement or otherwise so conducts himself in matters relating to the partnership business that it is not reasonably practicable to carry on the business in partnership with him;

. . . .

"(f) Other circumstances render a dissolution equitable."

The findings of fact made by the trial court were sufficient to support a decree of dissolution under § 7–60–132(1)(c), (d), and (f).

■ The court found that defendants, pursuant to their administration of the partnership business, permitted the nursing home to be operated for nearly a year without a licensed nursing home administrator. This represented a violation of § 12–39–102, C.R.S. (1985 Repl.Vol. 5) and exposed the partnership to loss of its hospital license and to potential third-party liability. Hence, defendants' conduct tended to affect prejudicially the carrying on of the partnership business and was grounds for dissolution under § 7–60–132(1)(c).

■ The court also found that defendants willfully refused to furnish plaintiffs with financial information relating to operation of the nursing home, thus depriving plaintiffs of their right to true and full information under § 7–61–111(1)(b), C.R.S. (1986 Repl. Vol. 3A). Defendants' refusal to furnish such information also justified a decree of dissolution under § 7–60–132(1)(d). *See Saballus v. Timke,* 122 Ill. App.3d 109, 77 Ill.Dec. 451, 460 N.E.2d 755 (1983); *Lau v. Wong,* 1 Hawaii App. 217, 616 P.2d 1031 (1980).

Judicial dissolution under § 7–60–132(1)(d) will also be granted if the evidence establishes substantial misconduct on a defendant partners' part. *See Master Garage, Inc. v. Bugdanowitz,* 690 P.2d 879 (Colo.App.1984); *see also Fuller v. Brough,* 159 Colo. 147, 411 P.2d 18 (1966).

■ Here, the trial court further found that defendants breached their duty as fiduciaries by paying themselves an unauthorized managment fee, that they failed to

relinquish their positions as general partners when voted out, and that the further friction and discord between partners resulted in polarization of the parties. Based on these facts, the court could reasonably have concluded that defendants had engaged in such substantial misconduct in matters relating to the partnership business that it was no longer reasonably practicable for plaintiffs to carry on the business in partnership with them. *See May v. Flowers,* 106 A.D.2d 873, 483 N.Y.S.2d 551 (1984), *appeal dismissed,* 64 N.Y.2d 611, 491 N.Y.S.2d 1025, 480 N.E.2d 749, (1985); *Saballus v. Timke, supra; Lau v. Wong, supra; Ferrick v. Barry,* 320 Mass. 217, 68 N.E.2d 690 (1946).

■ Furthermore, the circumstances between the limited and general partners were such that a dissolution decree would have been equitable under § 7–60–132(1)(f). *See Beals v. Tri-B Associates,* 644 P.2d 78 (Colo.App.1982). Hence, dissolution was an appropriate remedy.

■ Because judicial dissolution of the partnership was both available to plaintiffs and appropriate under the circumstances, the trial court erred in issuing an order to enforce defendants' removal as general partners pursuant to C.R.C.P. 106(a)(2), together with injunctive relief in aid thereof, when it should have granted plaintiffs' prayer for dissolution pursuant to § 7–60–132. Therefore, on remand, the court is directed to enter a decree dissolving the partnership.

### III.

Defendants further contend that the trial court erred in finding that they were not entitled to management fees. We disagree.

■ Without an express agreement, a general partner may not receive compensation for partnership business. *Yoder v. Hooper,* 695 P.2d 1182 (Colo.App.1984). Section 7–60–118(1)(f), C.R.S. (1986 Repl. Vol. 3A) provides:

"The rights and duties of the partners in relation to the partnership shall be deter-

mined, subject to any agreement between them, by the following rules:

. . . .

"(f) No partner is entitled to remuneration for acting in the partnership business. . . ."

This provision applies to limited partnerships by virtue of §§ 7–60–106(2) and 7–61–110(1), C.R.S. (1986 Repl.Vol. 3A). *See Horn v. Builders Supply Co.,* 401 S.W.2d 143 (Tex.Civ.App.1966).

Under § 7–60–118(1)(f), if a partnership agreement reserves the matter of partner compensation for future determination, an agreement between partners fixing the amount of salary is necessary before any right, legal or equitable, to receive salary even in a reasonable amount can be said to exist. *See Security-First National Bank v. Lutz,* 322 F.2d 348 (9th Cir.1963); *Vangel v. Vangel,* 116 Cal.App.2d 615, 254 P.2d 919 (1953); *Horn v. Builders Supply Co., supra.*

Here, no compensation was set forth in the limited partnership certificate, and the trial court found on supporting evidence that no agreement on management fees was ever reached. Because the parties were unable to agree on the amount of the general partners' compensation, they had only "an agreement to agree in the future," which is unenforceable. *See Griffin v. Griffin,* 699 P.2d 407 (Colo.1985); *Vangel v. Vangel, supra.* Defendants were therefore not entitled to receive compensation for managing the partnership business. *See Vangel v. Vangel, supra; Horn v. Builders Supply Co., supra.* Their contention that they are entitled to compensation based on *quantum meruit* is thus inapplicable under § 7–60–118(1)(f). *See Security-First National Bank v. Lutz, supra.*

Accordingly, the trial court properly found that defendants were not entitled to the $141,000 they had paid themselves in management fees. *See Horn v. Builders*

*Supply Co., supra.* However, the court improperly awarded this sum to plaintiffs; the proper remedy is to impose a constructive trust on those funds for the benefit of the partnership. *See Yoder v. Hooper, supra; see also Page v. Clark, supra.* Therefore, on remand the trial court is directed to amend the judgment from an award of damages to plaintiffs to the imposition of a constructive trust on all amounts that defendants have wrongfully paid themselves.

## IV.

Finally, defendants contend that the trial court erred in awarding plaintiffs attorney fees pursuant to § 13–17–102, C.R.S. (1986 Cum.Supp.). We agree.

We conclude that the court's judgment was entered upon disputed evidence and concerned unsettled areas of the law. Consequently, the award was unjustified under § 13–17–103, C.R.S. (1986 Cum.Supp.). *See Bill Manning, Inc. v. Denver West Bank & Trust,* 697 P.2d 403 (Colo.App.1984).

That portion of the judgment declaring the validity of the voting provision and that defendants are not entitled to management fees is affirmed. That portion of the judgment entered pursuant to C.R.C.P. 106(a)(2) and the injunctive relief awarded incident thereto is reversed. The awards of management fees and attorney fees to plaintiffs are also reversed. The cause is remanded with directions to enter a decree dissolving the limited partnership and imposing a constructive trust on the amount of management fees retained by defendants.

HODGES and SILVERSTEIN, JJ.,* concur.

* Sitting by assignment of the Chief Justice under provisions of the *Colo. Const.,* art. VI, Sec. 5(3), and § 24–51–607(5), C.R.S. (1982 Repl.Vol. 10).