Westley G. **HARLINE** and Richard Nilsson, Plaintiffs and Respondents,

v.

Lowell R. **DAINES**, A. Dean McKee, J. Davis Christensen, Robert T. Sena, Robert Morrow, and Sheridan L. Daines, Frontiers West, Inc., a Utah corporation, and Lynford L. Theobald, an Individual, and Executive Properties, a limited partnership, Defendants and Appellant.

No. 14701.

Supreme Court of Utah.

Aug. 5, 1977.

---

2.  Title 14, Chapter 2, U.C.A.1953 as amended.

L. Kent Bachman, John P. Sampson of Bachman & Lyon, Ogden, for defendants and appellant.

Richard Richards, Ogden, for plaintiffs and respondents.

MAUGHAN, Justice:

Before us is a convoluted set of facts, which the trial court correctly raveled out.

In an equitable proceeding, plaintiffs sought restitution of $40,000 ($20,000 each) and the imposition of an equitable lien [1] upon an apartment complex in which *defendant,* a limited partnership, had an interest. Upon trial before the court, plaintiffs were awarded a decree in equity for the payment of $40,000 against defendant.[2] Defendant appeals. We affirm. Costs to plaintiffs.

A 129 unit apartment complex, situated in Bellevue, Washington, was sold by the owners, Mastro and Gamel, in October 1970 to Apartment Enterprises a Utah Corporation. Thereafter, Apartment Enterprises, conveyed their interest in the property to B & L Enterprises, a limited partnership in which Apartment Enterprises was a general partner. In 1972 B & L Enterprises sold its interest in the property to Frontiers West, Inc., a Utah Corporation. Frontiers West organized defendant, Executive Properties, a limited partnership, in which Frontiers West and its president, Lynford L. Theobald were general partners. Frontiers West, by contract, conveyed all its right, title, and interest in the Bellevue property to Executive Properties. B & L Enterprises had assumed the obligations of Apartment Enterprises' contract with Mastro and Gamel, and Executive Properties assumed the obligations of the Frontiers West contract with B & L Enterprises.

In accordance with the contracts a payment of $50,000 was to be made to Mastro and Gamel by January 1, 1973. Mastro and Gamel did not receive the payment, and they filed an action to terminate the interests of Apartment Enterprises and B & L Enterprises. In turn, B & L Enterprises filed an action against Frontiers West to terminate its interest in the property. According to the evidence, Executive Properties was not joined as a party defendant because the predecessors in interest had no knowledge of its interest in the property.

1. Restatement, Restitution, Section 161: "Where property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that other-

wise the former would be unjustly enriched, an equitable lien arises.

2. Restatement, Restitution, Section 4(f).

Frontiers West failed to respond, and Apartment Enterprises and B & L Enterprises secured a default judgment divesting Frontiers West of all its right, title, and interest in the Bellevue property.

Several medical doctors were limited partners in Executive Properties. Three of the doctors had signed promissory notes as payment for their partnership interest. One doctor was in default prior to December 13, 1973. The other two had stated they would not pay, although their notes would not be in default until December 29, 1973. The doctors refused to pay their contributions to the partnership because their notes had been pledged as collateral to a bank by Frontiers West to secure funds for other activities in which the corporation was engaged. Furthermore, there had been sufficient cash contributions made by the limited partners to discharge the $50,000 installment. However, the general partners, Frontiers West and Theobald had diverted these funds into other interests. Frontiers West was in a poor financial condition and there was no cash available to make the $50,000 payment.

Theobald approached plaintiffs Harline and Nilsson requesting a loan to preserve the property. Both plaintiffs were members of the Board of Directors of Frontiers West and they knew of the corporation's serious financial condition. Plaintiff, Harline, was also a limited partner in Executive Properties. Plaintiff, Nilsson, was a limited partner in B & L Enterprises, the grantor of Frontiers West.

Theobald had contacted Mastro and Gamel, and they agreed to accept $42,000 as payment and to reinstate the contract. Theobald contacted B & L Enterprises and it agreed to reinstate the contract if their obligation to Mastro and Gamel were satisfied. Still Theobald could not secure any cash. Plaintiffs with their knowledge of Frontiers West's financial condition refused to loan the corporation any money. Theobald then informed plaintiffs he could forfeit the limited partnership interests of the doctors, who had defaulted on their promissory notes, and transfer the interests to plaintiffs. On December 13, 1973, each plaintiff paid $20,000 to Theobald, who in turn paid Mastro and Gamel $42,000. Mastro and Gamel dismissed their suit against Apartment Enterprises, which in turn executed a partial satisfaction of judgment to Frontiers West.

At the end of December 1973, after the three doctors were in default on the promissory notes, Theobald transferred their limited partnership interests to plaintiffs. At the time the three doctors had become members of the partnership, they had executed a document entitled, "Stock Power," wherein they had sold, assigned, and transferred their interest to Executive Properties, Limited. They further had appointed Frontiers West, their attorney to transfer their interests on the books of the partnership. Based on this document, Theobald transferred the interests to plaintiffs, for their $40,000 contribution.

Later, the limited partnership brought an action against the general partners, Frontiers West and Theobald, had them ousted, and their interest in the partnership terminated. Plaintiffs were not joined in this action. The court in that action ruled Theobald did not have the authority to transfer the interests of the defaulting doctors and they were reinstated as limited partners. As part of that action in accounting between the general and limited partners, the general partners were given a credit of $40,000, in the determination of the amount of funds which the general partners had diverted improperly from the partnership.

Subsequently, defendant sold the apartment complex for a substantial profit. The $40,000 paid by plaintiffs had, in fact, discharged to that extent defendant's contractual obligation to the prior grantors of the property.

■ Defendant asserted that plaintiffs had, in fact, made a loan to Frontiers West, the Corporation, and not to the general partner. The records in evidence indicate much confusion in determining when Frontiers West was acting as a general partner and when it was outside the scope of this

role. Defendant relies heavily on the minutes of a Board of Directors meeting at Frontiers West wherein the plaintiffs' contribution to save the apartment complex was discussed. It should be emphasized that Frontiers West, Inc. was a general partner, and a corporation acts through its Board of Directors. Therefore, the action of the board may be deemed that of the general partner in preserving the partnership interest in the apartment complex. The confusion of roles is revealed by the documents in evidence. All but one of the promissory notes of the limited partners were made payable to Frontiers West. In the document entitled, "Stock Power," the power of attorney of the limited partners is granted to Frontiers West.

Plaintiff, Harline, testified that his transaction was with Theobald, as general partner, rather than Theobald, President of Frontiers West. Both plaintiffs testified insistently they paid their money to purchase units in the limited partnerships; and that they would not have loaned funds to the failing corporation, which later went bankrupt.

The evidence emphasized by defendant which it contends indicates a loan to the corporation was explained by plaintiffs. The default judgment terminating Frontiers West's interest in the apartment complex had been entered in November, 1973. The payment had been due since January 1, 1973; if the interest in the property were to be reinstated, the payment had to be made immediately. However, two of the doctors' promissory notes were not due until December 29, 1973, although they had expressed a firm intention not to pay. The plaintiffs paid the $40,000 on December 12, 1973; the agreement was that the interest of the defaulting doctors would be transferred at the end of December to plaintiffs. If the doctors changed their minds and paid prior to default, plaintiffs would be reimbursed. The doctors, in fact, did not pay the notes, and their interests were transferred to plaintiffs as agreed.

The trial court found: the $40,000 solicited by Theobald was not a loan to the corporation, Frontiers West, but was money paid by plaintiffs to purchase additional limited partnership interests; the $40,000 was transmitted immediately to Mastro and Gamel to bring current the mortgage payment, which had been in default for approximately eleven months. The property was in extreme jeopardy, a judgment had already been entered divesting defendant of any interest in the property, and absent the payment of $40,000, defendant's equity in the property would have been lost; plaintiffs had received no benefit as a result of their payment of $40,000, but defendant had. The trial court concluded it would be unconscionable to allow Executive Properties to retain the benefit of the $40,000 paid by plaintiffs.

Defendant urges it was not unjustly enriched by the payment of plaintiffs.

Restatement, Restitution, Sec. 1, provides:

A person who has been unjustly enriched at the expense of another is required to make restitution to the other.

Comment c., states:

Even where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it. The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor. . . . The Restatement of this subject states the rules by which it is determined whether or not it is considered to be just to require restitution.

■ The trial court found that the transaction between the general partner, Theobald, and plaintiffs was a sale of units of the limited partnership interests. There is substantial competent evidence to support this finding. Although plaintiffs are not bound by the prior litigation between the limited and general partners since they were not joined as parties, they evidently accepted the ruling that the general partner did not have authority to transfer the interests of the defaulting limited partners.

**1124**

Plaintiffs' position may be deemed a mistake of law within the principles of restitution.[3] The principle of restitution applicable in the instant proceedings, as to the facts determined by the trial court, is set forth in Section 52(1), Restatement, Restitution:

> Unless it is otherwise agreed, a right to restitution exists in favor of a person who, erroneously believing because of a mistake of law that another has a right, title, or power, other than an interest in land, and induced by such mistake, has conferred a benefit upon the other in exchange for the transfer of or promise to transfer the right or title, or for the exercise of or the promise to exercise the power if, because of the non-existence of such right, title, or power, he fails to receive what it was agreed he should receive.

Defendant's claim that plaintiffs conferred the benefit officiously is without merit. Until the general partners were ousted, they alone under Section 48–2–9, U.C.A.1953, had the right and power to conduct the business of the partnership, and, in fact, the efforts of the general partners to save the partnership interest in the apartment complex was a benefit to defendant. Defendant contends the limited partners had devised a plan to circumvent the general partners by permitting the default judgment against Frontiers West to remain. The limited partners then intended to make a new arrangement with B & L Enterprises and reinstate the contract of sale of the property. Defendant characterizes plaintiffs' payment as officious because it interfered with the limited partners' plan. The rights of a limited partner are set forth in Section 48–2–10, U.C.A.1953. There is nothing there that confers on limited partners the power to interfere in the conduct of the partnership business or to surreptitiously devise a scheme to divert the assets from the partnership so as to deprive the general partners of their interest.

Defendant finally contends a change of circumstances makes it inequitable that it make restitution to plaintiffs. Defendant cites the accounting in the litigation between the general and limited partners and the fact the general partners liability to the limited partners was reduced by $40,000. Defendant claims any benefit conferred upon it was returned to Frontiers West.

Defendant's theory is untenable. It is unfortunate the general partners misapplied or dissipated the partnership funds, and the limited partners had an action against the general partners for a breach of their fiduciary duties, and for an accounting. Nevertheless, the liability of the partnership to a third person who has dealt with the general partner cannot be resolved by an accounting among the partners. The facts cannot be distorted. Plaintiffs' payment to the general partner saved the forfeiture of defendant's interest in a valuable property, and application of the funds reduced defendant's total indebtedness on its obligation. Such was a benefit conferred upon the partnership. Defendant in equity and good conscience must make restitution to plaintiffs.

ELLETT, C. J., and CROCKETT, WILKINS and HALL, JJ., concur.

---

3. Restatement, Restitution, Section 7, defines a mistake of law as a "mistake as to the legal consequences of an assumed state of facts."