625 P.2d 337

**R. Dixon WOOD and Don W. Heiple, Plaintiffs-Appellees and Cross-Appellants,**

v.

**HOLIDAY MOBILE HOME RESORTS, INC., an Arizona Corporation, and Wilfred O. Dunkel, Defendants-Appellants and Cross-Appellees.**

No. 1 CA–CIV 4591.

Court of Appeals of Arizona,
Division 1,
Department B.

Dec. 26, 1980.

Rehearing Denied Jan. 28, 1981.

Review Denied Feb. 18, 1981.

Brown & Bain, P. A. by Philip P. Berelson, Phoenix, for plaintiffs-appellees and cross-appellants.

Jack E. Evans, Ltd. by Jack E. Evans, Phoenix, for defendants-appellants and cross-appellees.

## OPINION

JACOBSON, Acting Presiding Judge.

The basic issue in this appeal is whether the trial court, upon an advisory jury's findings, properly ordered the dissolution of a limited partnership, and an accounting.

The facts surrounding this litigation and the various assertions of the various parties are complex and involved. This action was commenced by plaintiffs-appellees, R. Dixon Wood and Don W. Heiple (hereinafter referred to as "limited partners"), against defendant-appellant, Holiday Mobile Homes Resorts, Inc. (Holiday Mobile) and Wilfred O. Dunkel (Dunkel), seeking a dissolution and an accounting of a limited partnership known as Holiday Isle Mobile Home Park (Holiday Isle) and an adjudication of the rights of the various parties to the assets of Holiday Isle.

The defendants, Holiday Mobile and Dunkel, filed counterclaims in that action, which were subsequently dismissed by way of summary judgment. The counterclaims were based upon allegations of intentional interference with contractual relationships.

After a timely request for findings of fact and conclusions of law, the matter was tried to the court with an advisory jury. The advisory jury returned a verdict in favor of the limited partners and declared that the partnership should be dissolved and that there should be an accounting. Following the jury's verdict, the trial court ordered an accounting and took under advisement the jury's verdict as to dissolution. The limited partners then made an application for attorneys' fees, which was denied.

The limited partners, following the jury's verdict, applied for the appointment of a special master to conduct the accounting and for the appointment of a receiver. While the trial court, by minute entry, granted those motions, no further action was taken by the trial court for the appointment of a receiver. The trial court did, however, appoint J. Frank Sergent, a C.P.A. recommended by the defendants, to conduct an accounting.

Subsequently, Mr. Sergent submitted an audit report which was the subject of an in-chambers hearing before the trial judge on September 5, 1978. At that hearing, the limited partners submitted proposed findings of fact and conclusions of law, a proposed judgment and objections to the Sergent audit report. The court took no action on these matters at that hearing, except that the trial judge did announce his intention to order the dissolution of the limited partnership as requested by the limited partners.

Subsequently, on September 6, 1978, the defendants lodged a proposed form of judgment with the trial court which was immediately signed, without hearing and without any findings of fact or conclusions of law being entered. Although the limited partners objected to portions of the Sergent audit report which they contended were beyond the scope of the audit, the trial court denied them a hearing on these objections. Nevertheless, in the September 6, 1978, judgment signed by the trial judge and submitted by the defendant, the Sergent report was "approved by the Court."

The limited partners then filed objections to the defendant's form of judgment, a motion to amend judgment, and a motion to make additional findings. Without hearing, the trial judge denied all the limited partners' objections and motions.

The defendants then filed their notice of appeal and the limited partners their cross-appeal. While the trial court's judgment has ordered dissolution of the limited partnership, no receiver has been appointed. This court is unaware of: how the trial court treated the Sergent audit report except that it was "approved"; whether various legal contentions of the parties have been ruled upon by the trial court; and whether the trial court's judgment has disposed of all the legal issues presented by the parties. Apparently, the defendant has continued the active management of the limited partnership assets since the trial of this matter.

Simply by way of preface, the judges of this court, in their appellate experience, have not seen a more complete abrogation of judicial responsibility than is presented by the trial judge's inaction in this case. This matter was simply allowed to drift in spite of a trial and the fact finding efforts of the advisory jury.

The facts show that the Holiday Isle limited partnership was formed in 1964, with the corporation, Holiday Mobile, as the general partner and various individuals as limited partners. Holiday Isle was to own and manage a mobile home park in Tucson, Arizona. The mobile home park was financed by Western Savings & Loan Association, which took a mortgage on the limited partnership real property.

The general partner, Holiday Mobile, at this time also controlled two wholly-owned subsidiaries, Holiday Spa, Inc. and Holiday Village, Inc. These wholly-owned subsidiaries owned and operated mobile home parks in Maricopa County.

Under the articles of partnership, Holiday Mobile, as the general partner, was to be responsible for the overall management and supervision of the mobile home park "all without fee; provided, however, that the general partner shall be reimbursed for any actual costs or expenses incurred in performing these tasks," such actual costs and expenses to be a partnership expense.

Moreover, the articles of partnership required the general partner to provide the limited partners with a detailed monthly accounting and to provide an annual audit prepared by a certified public accountant. These reports had not been provided for some 10 years prior to this litigation.

Almost immediately following the formation of the limited partnership, financial difficulties were encountered. The mortgage holder threatened foreclosure and in 1966 the limited partnership was placed in a state receivership. In 1971, a former stockholder of Holiday Mobile petitioned to place that corporation into federal bankruptcy proceedings under Chapter X of the Bankruptcy Act. Holiday Mobile consented to these proceedings and David Roberts was

appointed as trustee of Holiday Mobile. As such trustee, Mr. Roberts undertook the management of Holiday Isle, the limited partnership.

At this point, the defendant Dunkel entered the scene. Dunkel is the chairman of the board, president, and owner of a majority of the stock in two corporations, Consolidated Security Corporation, a holding company, and National Mobile Development Company, a company which owns and manages several mobile home parks in Arizona and elsewhere.

Dunkel made a proposal to the trustee in bankruptcy whereby he would provide the trustee with a $1,200,000 letter of credit issued by First National Bank of Arizona, which was secured by a pledge of stock owned by Dunkel, and $50,000 cash to liquidate or bring current all of Holiday Mobile's debts. In return, Consolidated Security Corporation was to receive 66% of all of the common stock of Holiday Mobile and was to acquire mortgages on all the real property owned by Holiday Mobile and "its subsidiaries."

The Dunkel proposal was accepted by the trustee and subsequently approved by the referee in bankruptcy and the federal district court. As the result of this transaction, Dunkel not only received a mortgage from Holiday Mobile on the real property owned by it and its subsidiaries, Holiday Spa, Inc. and Holiday Village, Inc., but in addition, Holiday Mobile, as general partner, executed a mortgage on the real property owned by Holiday Isle, the limited partnership. The Dunkel mortgage on all three properties is in the face amount of $1,250,000, although Dunkel through accounting procedures has prorated this amount based upon the market value of the three properties. There is no question but that the limited partners did not approve the encumbering of the limited partnership property. However, there is a sharp conflict in the evidence as to whether the limited partners by reason of their participation in the federal bankruptcy proceedings were aware that as part of the Dunkel financing plan, the Holiday Isle property was to be

encumbered. Their subsequent failure to make any objection, it is argued, leads to an estoppel. The trial court's judgment does not resolve this issue.

In any event, it is clear that the funds generated by Dunkel were used by the trustee to pay off the obligations of the limited partnership, Holiday Isle, in the sum of $191,676.60.[1] This sum consists of paying $138,624.20 to Western Savings to bring the Holiday Isle mortgage current; $29,621.14 owed creditors of Holiday Isle; and $23,-431.26 in back taxes owed by Holiday Isle.

Dunkel, following the approval of the bankruptcy court, entered into the active management, through the general partner, Holiday Mobile, of the limited partnership. This management took the form of having National Mobile Development Company, in which Dunkel owns 63% of the common stock, receive a $75,000 loan from Holiday Isle. Holiday Mobile in turn entered into a management agreement with National Mobile Development whereby National Mobile was to receive 6% of the Holiday Isle partnership gross receipts as "management fees" to be offset against National Mobile's $75,000 indebtedness to Holiday Isle.

Under this management agreement the limited partnership, at least on paper, has flourished; its debts are current; the mobile park is filled to 100% capacity; and the value of its underlying real property has appreciated. However, as of the time of trial none of the limited partners had received one cent. The limited partnership, however, has paid out $232,252 to Dunkel in principal and interest on the Dunkel mortgage and National Mobile Development has received $63,341.52 in "management fees."

What precipitated this litigation was a letter sent by Holiday Mobile in July, 1973, to each of the limited partners of Holiday Isle. This letter requested the consent of the limited partners to the sale of Holiday Isle for the sum of $1,400,000. The letter went on to explain that after paying the Western Savings mortgage and the Dunkel mortgage, no monies would be left over for the limited partners. The letter also indicates that because of the deteriorating condition of the mobile home park, the offer of sale should be accepted. The letter concluded:

> ... if we fail to obtain your consent, we will have no alternative but to take immediate legal action to recover on the debt obligation from the limited partnership, and foreclose the park so that it might be sold ....

Attached to the letter was a financial statement of Holiday Isle which showed that the limited partnership owed an indebtedness to the general partner, Holiday Mobile, in the sum of $362,559. This statement was false. The $362,559 figure represented a capital account deficit of Holiday Mobile, not a debt owed to it.

Upon receipt of this letter, the limited partners (Wood being a C.P.A.) concluded that the financial statement was incorrect and that in fact, if the partnership asset was sold, the limited partners would receive approximately $384,000. At this point, a sharp conflict in the facts exists. Holiday Mobile contends that Heiple and Wood, after ascertaining the true financial picture of the limited partnership, and without telling their fellow limited partners, proceeded to buy up all the remaining limited partnership interests for approximately five cents on the dollar. On the other hand, Wood and Heiple contend that after making full disclosure to all the limited partners, they offered to either purchase the other limited partners' interests for 5% of their investment or the limited partner could contribute that same 5% towards the payment of attorneys' fees to seek a dissolution of the limited partnership and a distribution of its assets. The trial judge's judgment leaves unresolved this factual dispute.[2]

---

1. The sum of $220,123 is carried on the Holiday Isle books as being received under this transaction. The difference in these two sums represents expenses of the trustee in bankruptcy which we deem not to be payment of expenses or liabilities of Holiday Isle.

2. The advisory jury's verdict is also not particularly helpful. Although specific interrogatories were requested to be answered by the jury, the trial judge refused to submit them.

In any event, seven of the limited partners executed powers of attorney to Wood and Heiple, authorizing the commencement of this litigation and contributed towards the cost thereof.

Prior to filing suit, the limited partners met with Dunkel, pointed out the error in the financial statement, stated they represented all of the limited partners and requested that the proposed sale be completed. Dunkel refused on the basis that a sale at that time would have "adverse tax consequences" for Holiday Mobile. This litigation ensued.

The limited partners sought dissolution of the partnership on the following bases:

(1) that Holiday Mobile had not complied with the articles of partnership which required the general partner to render monthly and annual accountings;

(2) that Holiday Mobile had misrepresented the financial condition of the partnership by listing $362,559 as a debt of the partnership when in fact it was a capital deficit of Holiday Mobile;

(3) that Holiday Mobile had improperly caused a $1,250,000 mortgage to be placed upon the partnership's assets;

(4) that Holiday Mobile had breached the articles of partnership by entering into the management fee agreement with National Mobile Homes Development Company; and

(5) that they were entitled to dissolution under the Uniform Partnership Act.

Several of the major issues that should have been resolved by this litigation were:

(1) whether the limited partnership should be dissolved;

(2) whether the proper financial positions of the respective parties in the limited partnership are reflected in the audit;

(3) whether the Dunkel mortgage on the Holiday Isle property was valid; and,

(4) whether the payment of "management fees" to National Mobile was proper under the articles of partnership.

As previously indicated, although specifically and repeatedly requested to do so, the trial judge simply failed to resolve these issues, except to order a dissolution of the partnership.

On appeal, Holiday Mobile and Dunkel raise the following issues:

(1) whether the trial court properly ordered dissolution of the partnership;

(2) whether the trial court erred in ordering Holiday Mobile to pay the cost of the Sergent audit report; and

(3) whether the trial court erred in dismissing the counterclaim of Dunkel and Holiday Mobile.

The cross-appeal of the limited partners raises these issues:

(1) whether the trial court erred in failing to award them attorneys' fees;

(2) whether the trial court erred in not providing for the manner in which the affairs of the partnership are to be wound up;

(3) whether the trial court erred in not declaring the Dunkel mortgage invalid;

(4) whether the trial court erred in failing to determine that both Dunkel and Holiday Mobile were liable to the limited partnership for the management fees paid to National; and

(5) whether the trial court erred in not ordering Holiday Mobile to supply monthly and annual accountings.

## DISSOLUTION OF THE PARTNERSHIP

The appellants first contend that since the trial judge failed to make findings of fact and conclusions of law, the Sergent report must be considered as a "Special Master" report and must constitute the findings and conclusions of the trial judge. From this premise, they argue that since the Sergent report contains conclusions concerning the propriety of the Dunkel mortgage, the payment of management fees and the profitability of the limited partnership, these findings are inconsistent with the dissolution of the partnership and therefore the dissolution order must be reversed as unsupported by the evidence.

While the report of a master may constitute findings of fact and conclusions of law, *see* Rule 52(a), Rules of Civil Procedure, it is only those reports of masters which are appointed and function under the auspices of Rule 53, Rules of Civil Procedure, which are entitled to that status. Here, the trial court made no attempt to comply with this Rule of Civil Procedure. For example, Rule 53(h) provides:

> The court shall accept the master's findings of fact unless clearly erroneous. Within ten days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notices prescribed in Rule 6(c). The court *after hearing* may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions. (Emphasis added).

■ Notwithstanding the mandatory language that in the event objections are made to the report it will only be approved "after hearing," the trial judge afforded no hearing to the limited partners, and dismissed out of hand their objections before his approval. Under these circumstances, to afford the Sergent report the status of a master's findings of fact would thwart the Rules of Civil Procedure, and would deny the objectors due process.

Moreover, the legal conclusions of the report that the Dunkel mortgage was valid, that the management fee agreement was valid and that a *sua sponte* adjustment in the capital account of the general partner should occur were completely outside the delegation of responsibility to the auditor. These issues involve legal determinations based upon disputed factual positions, none of which the auditor heard or was qualified to rule upon. In short, the Sergent report

cannot substitute for the failure of the trial judge to perform his judicial obligations.[3]

The most that can be said of the Sergent report is that it is to be afforded the status conferred upon it by the limited partners. The financial portion of the report is an acceptable recap of what appears on the books of Holiday Isle.

Holiday Mobile, in any event, contends that the evidence does not support a dissolution of the limited partnership. This argument is based primarily upon an assertion that the limited partnership is operating at a profit and that the limited partners waived any breach of partnership agreement concerning accountings.

It is clear that upon breach of the partnership agreement, one of the rights possessed by a limited partner under the Limited Partnership Act is to "have dissolution and winding up by decree of court." A.R.S. § 29–310(A)(3).

■ However, an action of a partner which is merely trifling in nature or a temporary grievance without permanent damage does not form adequate grounds for dissolution. Rather the conduct must be legally substantial and evidence either gross misconduct or want of good faith or cause serious and permanent injury to the partnership. *Fuller v. Brough*, 159 Colo. 147, 411 P.2d 18 (1966). Obviously, a breach of the statutory duties imposed upon a general partner in a limited partnership, *see* A.R.S. § 29–309, would suffice to allow a court to dissolve a limited partnership.

A.R.S. § 29–309 provides in part that a general partner, without the consent of the limited partners, has no authority to:

1. Do any act in contravention of the certificate.

\* \* \* \* \* \*

·4. Possess partnership property, or assign their rights in the specific partner-

---

**3.** Rule 52(a), Rules of Civil Procedure, provides in part: "In all actions tried upon the facts without a jury or with an advisory jury, the court, if requested before trial, *shall* find the facts specifically and state separately its conclusions of law ...." (Emphasis added).

A timely request was made in this case, but the trial judge refused to perform his required functions.

ship property, for other than a partnership purpose.

■ As previously indicated, the limited partnership agreement provided that the general partner, Holiday Mobile, was to provide management of the limited partnership "all without fee." In direct contravention of this provision, Holiday Mobile entered into a "management fee" arrangement with National Mobile whereby 6% of the gross receipts of the limited partnership were paid for "management." This arrangement, of course, enures to the ultimate benefit of Dunkel, who was a 66% owner of Consolidated Securities and a 65% owner of National Mobile.

While we appreciate Holiday Mobile's assertion that this management arrangement may ultimately be beneficial to the limited partnership by providing an incentive to National Mobile to funnel renters to the Holiday Isle Mobile Home Park, the fact remains that this action is in contravention of the articles of partnership and was undertaken without prior approval of the limited partners.

Moreover, Dunkel caused the general partner, Holiday Mobile, to grant him a mortgage on the limited partnership property in the sum of $1,250,000. Even if that liability is prorated, a mortgage in the approximate sum of $330,000 was placed on the limited partnership assets at 12% interest. At the most, the limited partnership received a benefit from Dunkel's action of only $191,676.60 and money could be borrowed at that time for approximately 6% per annum. Aside from any orders of the bankruptcy court, which may or may not have approved of the placing of the mortgage on the limited partnership property, Holiday Mobile, as a general partner having complete authority to deal with the partnership business,[4] stands in a fiduciary position to the limited partners. *Bassan v. Investment Exchange Corporation*, 83 Wash.2d 922, 524 P.2d 233 (1974).

Under the facts presented to the trial court, the placing of a mortgage on the limited partnership property greatly in excess of the value received and at a substantially higher rate of interest than was required resulted in a breach of the high standard of conduct required of a general partner when dealing with the limited partnership business. This breach of the fiduciary relationship resulted in substantial harm to the limited partnership.

While the advisory jury and the trial court may have found additional conduct of the general partner which would justify dissolution, we find these continuing substantial breaches of the articles of partnership and fiduciary relationship sufficient to uphold the order of dissolution.

We therefore conclude, regardless of the profitability of the limited partnership business overall, sufficient grounds existed to terminate the limited partnership.

## COST OF ACCOUNTING

Following the jury's verdict in this matter, the trial court ordered that an accounting of the partnership be prepared. The cost of this accounting was $4,500 and the trial court ordered this sum to be paid by Holiday Mobile. Holiday Mobile objects to this cost, contending that the accounting was superfluous, was improvidently sought, and therefore should, if anything, be a limited partnership expense rather than an expense to the general partner.

■ The assessment of costs of an accounting in a partnership dissolution is a matter within the trial court's sound discretion. *Hurst v. Hurst*, 1 Ariz.App. 227, 401 P.2d 232 (1965). In view of the general partner's failure to render monthly or annual accountings to the limited partners for a period of over 10 years, its failure to keep complete records and its failure to allow the limited partners access to the books of the partnership, the trial court did not abuse its discretion in ordering the costs of accounting to be borne by the general partner.

4. We do not mean to intimate that the mortgage placed upon the limited partnership property was in fact a valid action of the general

partner, a subject dealt with later in this opinion.

## PROPRIETY OF THE DISMISSAL OF COUNTERCLAIM

In this action, Holiday Mobile and Dunkel filed counterclaims alleging that the limited partners had unlawfully interfered with the limited partnership's contractual relationships or its property. As to Holiday Mobile, the trial court dismissed its counterclaim on the theory that prior to a dissolution or accounting one partner may not sue another for a transaction arising out of the partnership business. *See Catron v. Watson*, 12 Ariz.App. 132, 468 P.2d 399 (1970). As to Dunkel, the trial court dismissed on the basis of a failure to state a claim.

■ In regard to the counterclaim of Holiday Mobile, it is clear in Arizona that insofar as a *general* partnership is concerned, the rule applied by the trial court was correct. *Jacob v. Cherry*, 65 Ariz. 307, 180 P.2d 217 (1947); *Pejsa v. Bridges*, 69 Ariz. 315, 213 P.2d 473 (1950); *Bohmfalk v. Vaughan*, 89 Ariz. 33, 357 P.2d 617 (1960). (*See*, however, specially concurring opinion in *Catron v. Watson, supra*, criticizing this result). Whether this rule should be applied to limited partnerships is less clear.

Whatever the reasons underlying the rule as applied to general partnerships, we see no reason to extend that rule to limited partnerships. Limited partners may be added without affecting continuation of the partnership. A.R.S. § 29–308. Limited partners have no liability to creditors of the partnership. A.R.S. § 29–307. Limited partners have no right to control the business of the partnership and have limited rights in the partnership assets. A.R.S. § 29–316.

In short, the "oneness" associated with general partners certainly does not exist in a limited partnership.[5] Seeing no reason to treat the members of a limited partnership differently from other litigants in civil actions, we conclude the trial court erred in dismissing Holiday Mobile's counterclaim solely on the basis of the status of the parties.

■ In regard to Dunkel's position on the counterclaim, we conclude the trial court acted properly. Nowhere in that counterclaim is it alleged that any injury was suffered by Dunkel, nor was any relief prayed for in his behalf. Because injury to the plaintiff is an essential element of the tort of wrongful interference with contractual relationships, the counterclaim as to Dunkel failed to state a claim for relief. *Chanay v. Chittenden*, 115 Ariz. 32, 563 P.2d 287 (1977).

We now turn to those issues raised by the limited partners' cross-appeal.

## VALIDITY OF THE DUNKEL MORTGAGE

■ The Dunkel mortgage grew out of the Chapter X bankruptcy of Holiday Mobile. The order of the bankruptcy court purportedly authorizing the mortgage on the limited partnership property stated: "That Wilfred O. Dunkel shall receive as security for the total amount of money provided by him for the Special Fund, mortgages on all property *owned by the debtor corporation and its subsidiaries . . . .*" (Emphasis added).

We agree with the limited partners that this order on its face did not authorize the placing of a mortgage on the limited partnership property. First, the limited partnership property was not owned by the general partner, Holiday Mobile, but is considered to be owned by the limited partnership firm. *State v. Elsbury*, 63 Nev. 463, 175 P.2d 430 (1946). Second, Holiday Isle is not a "subsidiary" of the general partners, as the word "subsidiary" was defined at that time by the Bankruptcy Act as a "corporation" which is substantially owned or controlled by the bankrupt. 11 U.S.C. § 506(13) (1970 ed., subsequently amended).

Dunkel argues, however, that because of various notices received by the limited partners and conferences between the trustee

---

5. Most jurisdictions recognize that general and limited partners may sue each other to enforce the partnership agreements, without first resorting to a dissolution. *See generally*, 68 C.J.S. Partnerships § 485, page 1037.

and the limited partners, they had knowledge that the limited partnership property was to be encumbered under the Dunkel financial plan, that the financial plan would not have gone through without this encumbrance and that the limited partnership property would have been lost without the Dunkel infusion of cash. From these premises, Dunkel argues that either the limited partners are estopped to deny the validity of the mortgage or he is entitled to an equitable mortgage on the property.

The limited partners on the other hand argue that the facts before the trial court do not support a finding that they had any prior knowledge of the actions of the trustee and that an equitable mortgage would in fact allow a general partner to encumber limited partnership property in payment of the general partner's obligation, contrary to the provisions of the limited partnership act.

While the trial court's judgment did not resolve the factual dispute, we do not consider this failure to be fatal to a resolution of this issue. The evidence is clear that at the time of the Dunkel offer to bail Holiday Isle out of its financial difficulties, the Western Savings mortgage on the partnership property was in arrearage in the sum of $138,624.20, and that Holiday Isle owed general creditors the sum of $29,621.14 and owed back taxes in the sum of $23,431.26. It is equally clear that the limited partners were not in a position to pay these debts.

While technically, as to creditors, these debts were an obligation of the general partners and the limited partners had no obligation to pay the same, A.R.S. § 29–307, the failure of the general partner to pay these obligations, particularly the Western Savings mortgage and the back taxes, would have resulted in the loss of the only asset of the limited partnership.

Thus, whether we consider the Dunkel financial aid to be a loan to the trustee in bankruptcy or a loan to the general partner, Holiday Mobile, is somewhat immaterial, for the fact remains that Dunkel's action bestowed a benefit upon the limited partnership which allowed it to continue in existence.

Under these circumstances, the trustee's authorization to Holiday Mobile to place a mortgage on the Holiday Isle property and Dunkel's reliance upon that authorization can properly be characterized as a "mistake of law," that is, "a mistake as to the legal consequences of an assumed state of fact." Restatement, Restitution § 7.

By reason of that mistake of law, Dunkel is, at least, entitled to restitution. Restatement, Restitution § 52(1); *Harline v. Daines*, 567 P.2d 1120 (Utah 1977). Restitution in this case should take the form of an equitable mortgage on the limited partnership real property. However that equitable mortgage must be limited to the amount of benefits actually bestowed upon the limited partnership, the sum of $191,676.60. Moreover, equity would require that the equitable mortgage bear interest at the market rate at the time of the transaction, in this case, 6% per annum.

We therefore hold that the Dunkel mortgage on the limited partnership is valid in the principal sum of $191,676.60, which sum shall bear interest at the rate of 6% per annum from the date of its inception. All payments previously made by the limited partnership on the mortgage shall be credited and upon remand the trial court shall determine the balance due and owing on this mortgage. In the event the mortgage has been overpaid, the trial court shall declare the mortgage lien satisfied and shall enter judgment in favor of the limited partnership against Dunkel for such overage.

## ATTORNEYS' FEES

The limited partners contend they are entitled to attorneys' fees under A.R.S. § 12–341.01 A, which provides in part: "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees." This section was effective as of September 1, 1976. The limited partners' action was commenced prior to that date. Under these circumstances, we have held that A.R.S. § 12–341.01 A is not appli-

cable. *USLIFE Title Co. v. Soule Steel Co.*, 122 Ariz. 79, 593 P.2d 302 (App.1977). The trial court properly denied the limited partners' application for attorneys' fees.

## MANAGEMENT FEES

 The limited partners next complain that the trial court failed to find Dunkel and Holiday Mobile personally liable for the payment of "management fees" to the National Mobile Development Company in contravention to the articles of limited partnership. We have previously held that these payments were a breach by the general partner of the partnership agreement. It must necessarily follow therefrom that these expenditures by the general partner were improper, and in any final accounting, the amount of such unauthorized expenditures must be deducted from the general partner's capital account.

However, we find that the evidence before the trial court was insufficient to allow the piercing of the corporate veil necessary to impose personal liability upon Dunkel for these expenditures or for any other debts that the general partner may owe to the limited partnership. In this regard, the trial court's failure to impose personal liability upon Dunkel was proper.

## WINDING UP AND ACCOUNTING

Since we have upheld the dissolution of this limited partnership, upon remand the trial court shall make such orders as it deems advisable to effectuate the speedy winding up of the partnership affairs, the dissolution of the partnership, and the distribution of the proceeds to the parties. In this regard, it would appear that the appointment of a receiver to accomplish this end would be in order. In addition, the trial court should consider ordering a new accounting to bring the financial affairs of the limited partnership current and to give effect to any changes required by this decision.

The judgment dissolving the limited partnership is affirmed. The judgment dismissing the counterclaim of Holiday Mobile is reversed and this matter is remanded for trial. The judgment dismissing the Dunkel counterclaim is affirmed. This entire matter is remanded to the trial court for such orders and further proceedings as are necessary to conform to this opinion.

EUBANK, J., and OGG, C. J., concur.