NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ROBERT G. FURST, *Plaintiff/Appellee/Cross-Appellant*,

*v.*

LINDA MAYNE, et al., *Defendants/Appellants/Cross-Appellees*.

No. 1 CA-CV 23-0202
FILED 01-28-2025

Appeal from the Superior Court in Maricopa County
No. CV2020-002498
The Honorable M. Scott McCoy, Judge

**AFFIRMED IN PART AND AMENDED IN PART**

COUNSEL

Womble Bond Dickinson LLP, Phoenix
By Todd Feltus, Daniel P. Crane
*Counsel for Plaintiff/Appellee/Cross-Appellant*

Ahwatukee Legal Office, PC, Phoenix
By David L. Abney
*Counsel for Defendants/Appellants/Cross-Appellees*

---

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Brian Y. Furuya and Judge David D. Weinzweig joined.

---

**M O R S E**, Judge:

¶1 Linda Mayne appeals the superior court's judgment in favor of Robert G. Furst on claims involving partnership dissolution, accounting, and enforcement of negotiable instruments. For the following reasons, we amend a clerical error in the final judgment, but otherwise affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2 Investor Clout was formed as a partnership in 2007 to invest in commercial-real-estate loans through Mortgages, Ltd., where Robert[1] was a managing director. The single-page partnership agreement stated that "cash flow from the partnership shall be distributed to the partners in proportion to their respective contributions. Profits and losses shall be allocated accordingly." The agreement also states that "[m]anagement of the partnership will be vested in all of the partners." Investor Clout's partnership was comprised of Robert, Linda, Stephen Mayne as trustee of the Stephen S. Mayne Exempt Trust, and Leonard Rosenberg. Robert and Linda are siblings, Stephen is Robert's brother-in-law, and Leonard is a family friend.

¶3 Mortgages, Ltd. collapsed in June 2008 and its bankruptcy agent, ML Manager, oversaw subsequent bankruptcy disbursements. To ensure Investor Clout received distributions from the bankruptcy proceedings, Robert left the management of Investor Clout but retained his economic interests. As a result of leaving the management of Investor Clout, Linda held Investor Clout assets on behalf of Robert. Between 2008 and 2018, Investor Clout received periodic distributions ("Distributions 1–10") totaling $1,171,828 of its original $1.8 million investment. Linda deposited all but one of these installments to multiple financial accounts, including personal accounts she shared with her husband, before making

---

[1] Because individuals involved in this matter share last names, we use first names for ease of reference.

distributions to Investor Clout's partners—Robert distributed the remaining installment to the partners with Linda's knowledge. Linda received $301,687.77 on Robert's behalf from Distributions 1–10, including the following which she remitted to him or for his benefit: (1) a 2015 check for $100,000 addressed to Robert, which Linda testified was presented for deposit in 2022 but rejected due to insufficient funds in the account; and (2) a 2015 check for $56,000 addressed to their parents, which Linda testified was for the benefit of Robert and that she placed a stop payment on sometime after 2015. Robert rejoined the management of Investor Clout in 2016.

¶4            In 2019, ML Manager notified Investor Clout of its intent to send an additional distribution of $403,068.99 ("Distribution 11"). However, Linda and Robert disagreed about how Investor Clout should receive and distribute the proceeds, and ultimately could not send joint instructions to ML Manager regarding the distribution. This resulted in ML Manager holding the funds of Distribution 11 and a subsequent distribution ("Distribution 12").

¶5            Robert filed this action in 2020, seeking declaratory and equitable relief, and the dissolution of Investor Clout. He also alleged breaches of fiduciary duty and oral contract. Linda moved to dismiss. The superior court: (1) found the breach claims untimely; (2) dismissed the claim for declaratory relief as to ML Manager's Distribution 11; (3) noted that Robert might have timely claims to the $100,000 and $56,000 checks; and (4) granted Robert leave to amend his complaint.

¶6            Robert amended his complaint to seek: (1) judicial dissolution of Investor Clout; (2) enforcement of the $100,000 and $56,000 checks; (3) declaratory judgment to receive any awarded relief from distributions of ML Manager; and (4) addition of Rosenburg as a defendant. Robert subsequently purchased Rosenburg's interest and obligations in Investor Clout, dismissed claims against him in this action, and asserted the acquired interest and obligations for purposes of winding up partnership accounts in a contemplated dissolution.

¶7            The superior court held a four-day bench trial, during which the parties presented various evidence, including partnership records, communications, and testimony. Linda, Robert, Stephen, and an accountant testified. Before trial, the court granted Linda's motion in limine to preclude evidence regarding attempted negotiation of the $100,000 check. During direct examination, however, Linda volunteered such testimony in response to broad questions about the check. The court

additionally heard argument from the parties pertaining to accounting, including the subject of missing distributions due to Leonard.

¶8          The superior court granted judicial dissolution and a winding up of Investor Clout.  The court noted that dissolution was proper because the action itself demonstrated that the partnership was not reasonably practicable to carry on, and that Linda's conduct had frustrated its economic purpose.

¶9          The superior court found the checks enforceable, concluded Robert was entitled to Leonard's amounts due, and calculated Robert was owed $183,000 in damages.  The $183,000 was comprised of: (1) the $100,000 unpaid check; (2) the $56,000 canceled check; (3) $17,000 due to Leonard and attributable to Robert; (4) $7,000 Linda withheld from Robert's portion of Distribution 10; and (5) $3,000 to compensate Robert for other prior distributions not fully paid due to errors in Linda's record keeping.  The court found that Linda's testimony, *supra* ¶ 3, demonstrated: (1) the $100,000 check was repudiated such that presentment was excused under A.R.S. § 47-3504(A); (2) the $56,000 check was intended for Robert's benefit; and (3) she issued a stop payment on the $56,000 check.

¶10          Lastly, the superior court ruled that Distributions 11–12 must be divided based on ownership interests in Investor Clout.  The court entered final judgment jointly and severally against Stephen, both individually and in his capacity as trustee.  The court entered the same judgment against Linda in her individual capacity.  The court denied Robert's request for attorney fees, noting that while he was successful on some of his claims, his bookkeeping and behavior throughout the action seemed purposeful to avoid judgment creditors of Mortgages, Ltd., rather than simply a good-faith effort that fell short.

¶11          Linda timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶12          Linda argues the superior court erred by: (1) allowing argument and evidence concerning the $100,000 check despite previously granting her motion in limine precluding them; (2) ruling the $100,000 and $56,000 checks were enforceable despite Arizona's Uniform Commercial Code ("UCC"); (3) awarding Robert distributions resulting from Leonard's ownership when those claims were not previously noticed as part of this action; (4) finding Linda frustrated the economic purpose of Investor Clout and granting judicial dissolution of Investor Clout; and (5) assigning

liability to Stephen personally rather than solely in his capacity as trustee. Robert asks for attorney fees on appeal, which Linda opposes.

¶13 "We review a trial court's findings of fact for abuse of discretion and reverse only when clearly erroneous." *In re Marriage of Gibbs*, 227 Ariz. 403, 406, ¶ 6 (App. 2011). We review legal questions de novo. *Id.* at 406–07, ¶ 6.

## I. Testimony Subject to Motion in Limine.

¶14 Linda argues the superior court erred in permitting testimony and damages related to the $100,000 check because the pretrial motion in limine barred argument or evidence concerning the check.

¶15 "Because a trial court and opposing counsel should be afforded the opportunity to correct any asserted defects before error may be raised on appeal, absent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal." *Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994).

¶16 Even though the superior court granted her motion in limine, Linda volunteered testimony about the $100,000 check during direct examination, including on the check's presentation for deposit in 2022 and subsequent dishonor. Linda's counsel did not object or move to strike her testimony about the check. Nor did Linda's counsel elicit contradictory testimony during her cross-examination. Linda's counsel only objected to Robert's request to testify on the subject and moved to strike Robert's closing argument referencing Linda's volunteered testimony.

¶17 Because Linda did not object to the superior court considering her volunteered testimony, she cannot raise this issue on appeal. *Id.*

## II. Enforceability of $100,000 and $56,000 Checks.

¶18 Linda argues that the $100,000 and $56,000 checks were improperly included as damages, asserting both claims were barred by the three-year statute of limitations of A.R.S. § 47-3118(C). Linda further argues that the $56,000 check was unenforceable because it was not addressed to Robert. While Linda only makes a fleeting reference to a three-year statute of limitations applying to the $100,000 check and only expands on such legal argument in her reply brief, we address her UCC statute-of-limitations argument as to both checks in the exercise of our discretion.

¶19 When an issue involves "a matter of statutory interpretation, we apply a *de novo* standard of review." *City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, 547, ¶ 8 (2005). An "action to enforce the obligation of a party to an unaccepted draft to pay the draft must be commenced within three years after dishonor of the draft or ten years after the date of the draft, whichever period expires first." A.R.S. § 47-3118(C). However, presentment may be excused when the "maker or acceptor has repudiated an obligation to pay the instrument," A.R.S. § 47-3504(A)(2), or when the "drawer or indorser whose obligation is being enforced has waived presentment or otherwise has no reason to expect or right to require that the instrument be paid or accepted," A.R.S. § 47-3504(A)(4). "When a defendant asserts the statute of limitations as a defense, that defendant has the burden of proving the complaint falls within the statute." *Kiley v. Jennings, Strouss & Salmon*, 187 Ariz. 136, 139 (App. 1996).

¶20 Here, the superior court found that Linda's testimony regarding the $100,000 check constituted repudiation such that presentment was waivable under A.R.S. § 47-3504(A). *Supra* ¶ 9. The testimony at trial established that the $56,000 check was issued to Linda and Robert's parents for Robert's benefit. *Id*. The court further found that her testimony of a stop payment issued on the $56,000 check was insufficiently specific as to date of occurrence to establish a three-year statute of limitations under A.R.S. § 47-3118(C). *Id*. We conclude the court's factual findings are supported by the record and discern no abuse of discretion in the court's conclusion that Linda has not met her burden of proving the claims were barred. *Kiley*, 187 Ariz. at 139. Accordingly, we affirm.

## III.    Notice of Claims as to Leonard's Distributions.

¶21 Linda argues that Robert's claim for Leonard's unpaid distributions violates Arizona Rule of Civil Procedure 13(a) as an untimely compulsory counterclaim, and that the $17,000 award for Leonard's distributions lacked sufficient evidentiary support.

¶22 A partnership may be dissolved through judicial dissolution if "[t]he economic purpose of the partnership is likely to be unreasonably frustrated," A.R.S. § 29-1071(5)(a), or "[i]t is not otherwise reasonably practicable to carry on the partnership business," A.R.S. § 29-1071(5)(c). After the partnership's obligations to creditors are satisfied, the partners are "entitled to a settlement of all partnership accounts on winding up the partnership business." A.R.S. § 29-1077(B). During the winding up of a partnership, "the assets of the partnership . . . shall be applied to discharge its obligations to creditors . . . Any surplus shall be applied to pay in cash

the net amount distributable to partners in accordance with their right to distributions." A.R.S. § 29-1077(A). When granting a judicial dissolution, the superior court may "make such orders as it deems advisable to effectuate the speedy winding up of the partnership affairs." *Wood v. Holiday Mobile Home Resorts, Inc.*, 128 Ariz. 274, 284 (App. 1980).

**¶23** "[R]elations among the partners and between the partners and the partnership are governed by the partnership agreement." A.R.S. § 29-1003(A). A partner's transferrable interest "is the partner's share of the profits and losses of the partnership and the partner's right to receive distributions." A.R.S. § 29-1042.

> A transferee of a partner's transferable interest in the partnership has a right to:
> 1. Receive, in accordance with the transfer, distributions to which the transferor would otherwise be entitled.
> 2. Receive on the dissolution and winding up of the partnership business, in accordance with the transfer, the net amount otherwise distributable to the transferor.

A.R.S. § 29-1043(B)(1)–(2).

**¶24** Here, both Robert and Linda requested judicial dissolution. The superior court found that A.R.S. §§ 29-1071(5)(a) and -1071(5)(c) were applicable, ordering Investor Clout's dissolution and a winding up of partnership affairs under A.R.S. § 29-1077(A).

**¶25** For purposes of winding up, Robert asserted entitlement to $17,000 in unpaid portions of Distributions 1–10 related to Leonard's interest in Investor Clout which Robert had purchased. And while Linda asserts that the superior court relied upon no fact supporting this figure, the record shows the court reviewed partnership records and heard testimony. *Supra* ¶ 7. The superior court concluded that this $17,000 formed part of the partnership's unresolved distributions and was subject to the same accounting principles as other partnership assets pursuant to A.R.S. §§ 29-1003, -1042, and -1043(B)(1)–(2). The superior court's factual findings are supported by the record. Accordingly, we affirm. *Gibbs*, 227 Ariz. at 406–07, ¶ 6.

## IV.    Judicial Dissolution of Investor Clout.

**¶26** Linda argues the superior court erred in determining she frustrated Investor Clout's economic purpose pursuant to A.R.S. § 29-1071(5)(a). In support, Linda asserts that the standard of determining

frustration-of-economic-purpose claims as a defense to contractual non-performance is applicable and unmet. Linda further asserts that, as a result, she did not consent to judicial dissolution, rendering it an abuse of discretion.

¶27        Here, the superior court found that both A.R.S. § 29-1071(5)(a) and -1071(5)(c) were applicable. Linda makes no argument regarding the latter determination. And that determination is amply supported by testimony describing irreconcilable differences in the management of Investor Clout. *Supra* ¶ 4. We decline to address her arguments regarding A.R.S. § 29-1071(5)(a) because A.R.S. § 29-1071(5)(c) provides an independent basis to uphold the superior court's decision to dissolve Investor Clout. *See City of Phoenix v. Geyler*, 144 Ariz. 323, 330 (1985) (recognizing that we are obliged to "affirm where any reasonable view of the facts and law might support the judgment of the trial court"); *Arnold v. Knettle,* 10 Ariz.App. 509, 511 (1969) (noting that we must affirm "if the trial court was correct in its ruling for any reason"). As to Linda's assertion that her consent was necessary for judicial dissolution to occur, we disagree. Judicial dissolution without a partner's consent is permissible. *Imperial Litho/Graphics v. M.J. Enters.,* 152 Ariz. 68, 76 (App. 1986) (finding partner "was entitled to seek judicial dissolution of the partnership for cause," despite the partnership agreement only contemplating "voluntary dissolution upon agreement of all partners"). Accordingly, we affirm.

## V.    Stephen's Liability as Trustee.

¶28        Linda argues a ministerial error appears in the superior court's final judgment. The error appears on page 4, lines 4–6, and enters judgment "jointly and severally, against Defendants Linda Mayne and Stephen S. Mayne." Robert concedes this was error, and we accept the parties' invitation to correct the error. We therefore amend the final judgment on page 4, lines 4–6, to replace the aforementioned text with "jointly and severally, against Defendants Linda Mayne and Stephen S. Mayne, as trustee of the Stephen S. Mayne Exempt Trust."

## VI.    Attorney Fees on Appeal.

¶29        Linda opposes Robert's request for attorney fees on appeal, asserting that the issues raised were legitimate and not frivolous.

¶30        Courts may award attorney fees to the successful party in contract disputes. A.R.S. § 12-341.01(A). "[A]n award of fees under A.R.S. § 12-341.01 is discretionary; it is not an entitlement." *Munger Chadwick, P.L.C. v. Farwest Dev. and Const. of the Sw., LLC*, 235 Ariz. 125, 128, ¶ 14 (App.

2014). Although Robert prevailed on most issues, making him the successful party on appeal, we note our agreement with the superior court's categorization of Robert's behavior in this action as "*not* a good faith effort that simply fell short, but as a purposeful effort to avoid judgment creditors . . . that—fortunately for him—never materialized." In the exercise of our discretion, we decline to award Robert attorney fees on appeal.

## CONCLUSION

**¶31** For the foregoing reasons, we amend the final judgment to prescribe liability to Stephen only as trustee, but otherwise affirm the superior court's judgment. Robert may recover taxable costs upon compliance with ARCAP 21.

